**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

PATRICIA LUCERO,

     Plaintiff,

V.                                                                                          19-cv-0311 KK/JHR

NATIONWIDE MUTUAL INSURANCE COMPANY;
NATIONWIDE PROPERTY AND CASUALTY
INSURANCE COMPANY; NATIONWIDE GENERAL
INSURANCE COMPANY; NATIONWIDE INSURANCE
COMPANY OF AMERICA; NATIONWIDE ASSURANCE
COMPANY; NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY; TITAN INDEMNITY COMPANY; and
VICTORIA FIRE AND CASUALTY COMPANY,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court on three fully briefed motions: (1) a Motion to Strike

Plaintiff's Response to Notice of Supplemental Authority (Doc. 48) ("Motion to Strike"), filed by

Defendants Nationwide Mutual Insurance Company, Nationwide Property and Casualty Insurance

Company, Nationwide General Insurance Company, Nationwide Insurance Company of America,

Nationwide Assurance Company, and Nationwide Mutual Fire Insurance Company (collectively,

"Nationwide" or the "Nationwide Defendants"), (2) a Motion for Judgment on the Pleadings

(Doc. 27) filed by the Nationwide Defendants (the "Nationwide Motion"), and (3) a Motion for

Judgment on the Pleadings (Docs. 24, 25) filed by Titan Indemnity Company and Victoria Fire

and Casualty Company (collectively, "Titan") (the "Titan Motion").

Having reviewed the entire record and the applicable law and being otherwise sufficiently

advised, the Court finds Nationwide's Motion to Strike well-taken and grants the motion. The

Court further finds the Nationwide Motion well-taken in its challenge to the Court's subject matter jurisdiction over the Nationwide Defendants based on the claims presently asserted against them. As such, the Court dismisses Plaintiff's claims against these Defendants without prejudice to her ability to seek leave to amend her First Amended Complaint ("FAC"). Finally, the Court finds the Titan Motion well-taken in part. Specifically, the Court dismisses Plaintiff's claims for Reformation of Insurance Policy (Claim 4), Unjust Enrichment (Claim 6), and Injunctive Relief in whole, and dismisses in part Plaintiff's claims for Negligence (Claim 1), Violations of the New Mexico Unfair Insurance Practices Act (Claim 3) and Breach of the Covenant of Good Faith and Fair Dealing (Claim 5). In all other respects, the Titan Motion is denied.

## I.   <u>BACKGROUND</u>[1]

Under New Mexico law, motorists are required "to carry liability insurance limits of at least $25,000 per person and $50,000 per occurrence *and* uninsured motorist coverage (which includes underinsured motorist coverage) of at least the same amount." *Crutcher v. Liberty Mut. Ins. Co*., 2022-NMSC-001, ¶ 17, 501 P.3d 433, 437 ("*Crutcher*"[2]); *see* N.M. Stat. Ann. §§ 66-5-215(A)(1), 66-5-301(A)-(B) (1983). "[O]nly if the motorist purchases higher than minimum liability coverage may higher than minimum [uninsured/underinsured motorist ("UM/UIM")] coverage be purchased." *Crutcher,* 2022-NMSC-001, ¶ 17, 501 P.3d at 437. Consistent with this statutory scheme, Plaintiff purchased liability insurance coverage issued by Titan, with the minimum legal limits of $25,000 per person and $50,000 per occurrence. (Doc. 1-1 at 9). Plaintiff also purchased UM/UIM coverage of $25,000 per person and $50,000 per occurrence, which was

---

[1] The following facts are derived from Plaintiff's FAC, which is the operative complaint. (Doc. 1-1).

[2] Unless expressly noted otherwise, textual references to "*Crutcher*" are to the New Mexico Supreme Court's decision in *Crutcher*, 2022-NMSC-001, 501 P.3d 433.

the maximum amount permitted due to Plaintiff's purchase of liability coverage at that level. (Doc. 1-1 at 9); § 66-5-301(A)-(B). Plaintiff paid a premium of $74 for UM/UIM coverage for the period from August 4, 2014, to February 4, 2015.[3] (Doc. 1-1 at 9).

Plaintiff's policy (the "Policy") defines an "underinsured motor vehicle" as "a motor vehicle for which bodily injury or property damage liability coverage is in effect; however, their total amount is less than the limits of this coverage." (Doc. 25-1 at 25). It further provides that "[c]overage limits will be reduced by any . . . sums paid by or for any liable parties, including, with respect to an uninsured motor vehicle which is underinsured: (1) reimbursement for Personal Injury Protection benefits; (2) proceeds paid to medical providers; or (3) proceeds received as attorney fees." (*Id.* at 27–28) ("Offset Provision"). The Offset Provision is consistent with *Schmick v. State Farm Mutual Automobile Insurance Company*, in which the New Mexico Supreme Court held that an insured's UM/UIM recovery "is always offset by the tortfeasor's liability insurance coverage." 1985-NMSC-073, ¶ 30, 704 P.2d 1092, 1100. This principle is known as the "offset rule." *Crutcher*, 2022-NMSC-001, ¶ 9, 501 P.3d at 435.

On January 2, 2015, Plaintiff was involved in an automobile accident caused by a driver whose liability coverage was the same as Plaintiff's: $25,000 per person and $50,000 per occurrence. (Doc.1-1 ¶¶ 34-35, 39). Plaintiff received $25,000 from the tortfeasor's insurer. (*Id.* ¶¶ 34-35, 39, 43-45). Because she incurred over $50,000 in damages from the accident, Plaintiff filed a claim for underinsured motorist benefits under the Policy. (*Id.* at ¶¶37, 39, 43–44). Titan denied Plaintiff's claim on the ground that the maximum amount she could recover through the

---

[3] In the unjust enrichment and negligent misrepresentation claims asserted in the FAC, Plaintiff relies on allegations regarding Defendants' actions beginning in 1985. (Doc. 1-1 at 24-26, ¶¶ 118, 123, 125). However, Plaintiff also alleges that she purchased the UM/UIM coverage in question in 2014 and that Defendants denied her claim for UIM benefits after an accident in January 2015. (*Id.* at 9, 11, ¶¶ 18, 23, 34). Accepting as true the FAC's allegations that Plaintiff's first pertinent interactions with Defendants were in 2014, her allegations regarding Defendants' actions nearly three decades earlier are wholly irrelevant to her unjust enrichment and negligent misrepresentation claims.

UM/UIM coverage she had purchased from Titan, *i.e.*, $25,000, was offset by the $25,000 she received from the tortfeasor's insurer pursuant to the Offset Provision in the Policy. (*Id*. ¶ 47). Plaintiff then filed suit in the Second Judicial District of New Mexico, and Defendants removed the matter to this Court. (Docs. 1, 1-1).

In the FAC, Plaintiff alleges that Titan's application, application process, and Policy misled her about the offset rule and failed to inform her that "underinsured motorist coverage is illusory in the event of a covered occurrence involving an underinsured driver" who also carries minimum limits insurance. (Doc. 1-1 ¶ 26). Plaintiff also alleges that Titan's agents made "oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico." (*Id*. ¶ 81). She asserts that Titan "or its agents took advantage of its customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for illusory and/or misleading underinsured motorist coverage." (*Id*. ¶ 83). In addition, Plaintiff maintains that, because of Titan's misrepresentations, she "mistakenly believed that, by paying a premium for underinsured motorist coverage, [she] would receive underinsured motorist coverage at those same specific dollar amounts and limits." (*Id*. ¶¶ 104, 106).

Plaintiff asserts claims on her own behalf and on behalf of a class defined as

All persons (and their heirs, executors, administrators, successors, and assigns) from whom Nationwide collected a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Nationwide and that purported to provide underinsured motorist coverage, but which effectively provides no underinsured motorists coverage and/or misleading underinsured motorist coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, [1985-NMSC-073,] 704 P.2d 1092[.]

(Doc. 1-1 at ¶ 50). The proposed class includes a proposed subclass, which includes

All Class Members (and their heirs, executors, administrators, successors, and assigns from whom Nationwide collected a premium for an underinsured motorist

> coverage on a policy that was issued or renewed in New Mexico by Nationwide and that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage and/or misleading underinsured motorist coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, [1985-NMSC-073,] 704 P.2d 1092 [], and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available and would be denied those benefits by Nationwide due to the *Schmick* offset.

(*Id*. ¶ 52).

In sum, as in several other cases currently pending in this district, "[t]he crux of Plaintiff's complaint lies in [Defendants' alleged] misrepresentations regarding the benefits she would receive in the event of an accident with another motorist who had the minimum level of automobile insurance coverage. Plaintiff does not simply attack the UM/UIM coverage, but how [Defendants] frame[] that coverage when selling policies to [their] insureds." *Apodaca v. Young Am. Ins. Co*., No. 18-cv-399 RB/JHR, 2019 WL 231757, at *6 (D.N.M. Jan. 16, 2019); *see Belanger v. Allstate Fire & Cas. Ins. Co*., No. 19-cv-317 WJ/SCY, 2022 WL 611487, at *8 (D.N.M. Mar. 2, 2022); *Thaxton v. GEICO Advantage Ins. Co*., No. 18-cv-306 KWR/KK, 2022 WL 562264, at *1 (D.N.M. Feb. 24, 2022); *Palmer v. State Farm Mut. Auto. Ins. Co*., No. 19-cv-301 KWR/SCY, 2022 WL 343590, at *1 (D.N.M. Feb. 4, 2022); *Crutcher v. Liberty Mut. Ins. Co.*, No.: 18-cv-412 JCH/KBM, 2019 WL 12661166 at *2(D.N.M. Jan. 9, 2019); *Schwartz v. State Farm Mut. Auto. Ins. Co*., No. 18-cv-328 WJ/SCY, 2018 WL 4148434, at *5 (D.N.M. Aug. 30, 2018).

Based on these allegations, Plaintiff asserts claims for negligence; violations of New Mexico's Unfair Trade Practices Act ("UTPA"), N.M. Stat. Ann. §§ 57-12-1 to -26; violations of New Mexico's Unfair Insurance Practices Act ("UIPA") N.M. Stat. Ann. §§ 59A-16-1 to -30; reformation of the insurance policy; breach of the covenant of good faith and fair dealing; unjust enrichment; negligent misrepresentation; and declaratory judgment and injunctive relief. (Doc.1-1).

Defendants filed answers to the FAC. (Docs. 5, 6). While this matter was pending, United States District Judge Judith C. Herrera, presiding in *Crutcher v. Liberty Mutual Insurance Co.*, No.: 18-cv-412 JCH/KBM (D.N.M.), certified the following questions to the New Mexico Supreme Court:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher v. Liberty Mut. Ins. Co.*, 2019 WL 12661166 at *4 (D.N.M. Jan. 9, 2019). The Court stayed the present case pending the New Mexico Supreme Court's answer in *Crutcher*, which that court issued in October 2021. *See Crutcher*, 2022-NMSC-001, 501 P.3d 433; (Doc. 20). The Court lifted the stay of this case the same month. (Doc. 21). Defendants' motions are now before the Court.

Because it bears on the Nationwide Motion, the Court will first address the Nationwide Defendants' Motion to Strike and will then address the merits of the Nationwide Motion. Finally, the Court will turn to the Titan Motion.

## II. <u>NATIONWIDE'S MOTION TO STRIKE</u>

After filing their Motion for Judgment on the Pleadings, the Nationwide Defendants filed a Notice of Supplemental Authority ("NSA") (Doc. 45), to which Plaintiff filed a response ("Response to the NSA"). (Doc. 46). The Nationwide Defendants move to strike Plaintiff's Response to the NSA because it exceeds the word and page limits set by local rules and because Plaintiff improperly attached a proposed amended complaint to the Response. (Doc. 48).

Plaintiff's Response to the NSA did not comply with this Court's Local Rules. Under Local Rule 7.8(c), a response to a notice of supplemental authority must be limited to 350 words.

D.N.M.LR-Civ. 7.8(c). Plaintiff's Response to the NSA exceeds that limit without leave to do so. Further, the exhibits attached to Plaintiff's Response to the NSA total over 100 pages, twice the limit permitted by Local Rule 10.5. Also, to the extent Plaintiff seeks leave to file the attached proposed amended complaint, the Response to the NSA is improper under Federal Rule of Civil Procedure 7(b), which requires requests for a court order to be made by a motion, and Federal Rule of Civil Procedure 15(a)(2), which requires the Court's leave to amend a complaint under the circumstances presented here. Hence, the request for leave to amend in Plaintiff's Response to the NSA does not put the issue properly before the Court. *See* (Doc. 46 at 3); *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("We have long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court."). The Court will, therefore, strike Plaintiff's Response to the NSA.

### III. LEGAL STANDARDS FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS

A party may file a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for several purposes and the legal standards governing the Court's analysis of such motions vary depending on the purpose of the motion and the "substance and issues" in it. *Swepi, LP v. Mora Cnty., N.M.*, 81 F.Supp.3d 1075, 1146 (D.N.M. 2015). For example, if the motion for judgment on the pleadings seeks dismissal based on a lack of subject-matter jurisdiction, the Court will analyze the motion as it would a motion for relief under Rule 12(b)(1). *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.,* 439 F.Supp.2d 1171, 1173 (W.D.Okla. 2006) (analyzing the defendants' Rule 12(c) motion under the standards applicable to Rule 12(b)(1) motions because it challenged subject-matter jurisdiction); *see* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.) ("[I]f a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1).").

Similarly, motions for judgment on the pleadings seeking dismissal of claims based on a plaintiff's failure to state a claim are reviewed under Rule 12(b)(6) standards. *Swepi*, 81 F.Supp.3d at 1146; Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)[.]"). When failure to state a claim is raised in a Rule 12(c) motion, "a court must determine whether the claimant has stated a claim upon which relief may be granted." *Amaya v. Bregman*, 186 F.Supp.3d 1280, 1282 (D.N.M. 2016). To avoid dismissal, a "complaint must contain enough 'facts to state a claim to relief that is plausible on its face' and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249. "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020) (quotation marks omitted).

In determining whether a complaint states a plausible claim to relief, courts "accept as true all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotation marks omitted).

If a motion for judgment on the pleadings seeks dismissal of a claim or claims under either Rule 12(b)(1) or (6), the Court's granting of the motion results not in "judgment" in the movant's favor but in dismissal. *See, e.g., Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (affirming the district court's dismissal of claims on a Rule 12(c) motion alleging failure to state a claim); *Ponca Tribe of Indians of Oklahoma*, 439 F.Supp.2d at 1178 (granting a motion for judgment on the pleadings challenging subject-matter jurisdiction and dismissing the claims at issue).

In contrast, when a party files a Rule 12(c) motion seeking a judgment on a claim or issue rather than dismissal, the Court may enter a judgment, but only when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Sanders v. Mountain America Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (quotation marks omitted). The purpose of a Rule 12(c) motion in this context is "to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings." *Kellar v. U.S. Dep't of Veteran's Affairs*, No. 08-cv-761, 2009 WL 1706719, at *1 (D. Colo. June 17, 2009) (unreported) (quoting 5C Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1367 (3d ed.)).

Generally, when considering a motion for judgment on the pleadings, the Court "accept[s] all well-pleaded allegations in the complaint as true and 'construe[s] them in the light most favorable to the plaintiff.'" *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 529 (10th Cir. 1992) (quoting *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)). In addition, the Court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Tuttle v.*

*Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-526 NYW, 2019 WL 2208513, at *2 (D. Colo. May 22, 2019) (unreported) (quoting *L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 422 (2d Cir. 2011)).

## IV. THE COURT WILL CONSIDER THE POLICY

When "matters outside the pleadings are presented to and not excluded by the court," a motion under Rule 12(b)(6) or 12(c) generally "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Under these circumstances, the Court need not convert a motion for judgment on the pleadings to a summary judgment motion under Rule 56. *Woodie v. Berkshire Hathaway Homestate Ins. Co.*, 806 F. App'x 658, 664–65 (10th Cir. 2020) ("Rule 12(d) is not implicated when a court 'consider[s] documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017)); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (holding that the district court properly considered a letter without converting a motion to dismiss into a motion for summary judgment, where the complaint referred to the letter and the plaintiff did not dispute the authenticity of the letter attached to the defendant's motion to dismiss).

Here, Titan attached a copy of the Policy to its Motion and asks the Court to take judicial notice of it.[4] (Doc. 25 at 3 n.1). Plaintiff does not oppose this request or dispute the Policy's authenticity. (Doc. 31). In addition, she refers to the Policy throughout the FAC, and it is central

---

[4] Although Plaintiff refers to the Policy repeatedly in the FAC, she attached only her completed application form and the Policy's Declarations page. (Doc. 1-1 at 30–39).

to her claims. *See generally* (Doc. 1-1.) The Court will, therefore, consider the Policy. *Jacobsen*, 287 F.3d at 941.

## V.  THE NATIONWIDE MOTION FOR JUDGMENT ON THE PLEADINGS

In the Nationwide Motion, the Nationwide Defendants argue that this Court lacks subject-matter jurisdiction over Plaintiff's claims against them because Plaintiff lacks standing to bring those claims. (Doc. 27 at 1–2). Under Article III, Section 2 of the United States Constitution, federal courts have jurisdiction over "cases" or "controversies." *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 926 (10th Cir. 2005). A "case" or "controversy" exists if "the plaintiff can establish what is known as 'constitutional standing.'" *Id.* Without such a showing, the Court does not have jurisdiction to hear the matter. *Id.* ("[C]onstitutional standing is necessary to the court's jurisdiction[.]").

It is Plaintiff's burden to demonstrate that she has standing. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). To establish standing, Plaintiff must show that: "(1) she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)). Moreover, Plaintiff "must demonstrate standing for each claim [s]he seeks to press[,]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), and that her injuries are traceable to each Defendant. *Hernandez v. Grisham*, 499 F.Supp.3d 1013, 1048 (D.N.M. 2020) (citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65 (2d Cir. 2012) (concluding that a plaintiff failed to demonstrate that her "injury resulting from the conduct of one defendant should have any bearing on her Article III standing to sue other defendants[.]")).

Challenges to subject-matter jurisdiction may consist of: "(1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the

actual facts upon which subject-matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). In considering a facial attack, the Court "presume[s] all of the allegations contained in the amended complaint to be true." *Id*. Conversely, when the factual basis for jurisdiction is challenged, "the court may not presume the truthfulness of the factual allegations in the complaint[] but may consider evidence to resolve disputed jurisdictional facts." *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert [a] motion to dismiss into a motion for summary judgment in such circumstances." *Id*.

As grounds for dismissal, the Nationwide Defendants contend that Plaintiff "cannot establish an injury in fact that is fairly traceable to, and redressable by, any of the Nationwide Defendants," as required for her to have standing. (Doc. 27 at 14). In response, Plaintiff argues that she has established standing because the FAC "sufficiently alleges, and the record already includes, requisite facts to support [a] joint venture" amongst the Nationwide Defendants and Titan, thereby demonstrating that her injuries are traceable to all of the joint venture's members. (Doc. 40 at 7). In the alternative, she requests leave to file an amended complaint after she has taken discovery to support her joint venture claims. (*Id*.)

The Court finds that Plaintiff has not shown or adequately alleged that her injuries are traceable to any of the Nationwide Defendants. First, the Nationwide Defendants challenge the factual basis for Plaintiff's allegation that they issued the Policy through Shawn T. McClain's Declaration[5] that, at the time of Plaintiff's accident, none of the Nationwide Defendants insured her. (Doc. 27-1 at 2). Plaintiff has not provided any evidence to the contrary, nor has she disputed that, as the Policy shows, Titan issued the Policy and Victoria Fire and Casualty Company

---

[5] The Court may consider this affidavit under Rule 12(b)(1) because the Nationwide Defendants challenge the truth of contrary allegations against them in the FAC. *Hernandez*, 499 F. Supp. 3d at 1018-19.

underwrote it. (*See generally id.*) The Court therefore finds that none of the Nationwide Defendants insured Plaintiff at the time of her accident and her injuries are not traceable to them based on a contractual relationship. *See SK Fin. SA*, 126 F.3d at 1275.

Second, even if the allegations in the FAC are taken as true, neither the FAC nor the documents attached to it identify the role each Nationwide Defendant played in the marketing, sale, and/or adjustment of the Policy. Instead, the FAC's allegations refer to an undifferentiated "Nationwide," which includes all named defendants. (Doc.1-1 at 6, 9–12). And the documents Plaintiff presents in an attempt to show standing suffer from the same defect. (Doc. 40-1–40-5). Plaintiff's showing therefore does not establish that her injuries are traceable to any Nationwide Defendant. *See Thaxton*, 2022 WL 562264, at *3 (finding that the plaintiff had not shown that his injuries were caused by some named defendants where the plaintiff did not "allege any specific actions taken by [those d]efendants which allegedly harmed him"); *cf. Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[A] complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."); *Paul v. New Mexico*, No. 98-cv-690 MV/WWD, 1999 WL 35809734, at *3 (D.N.M. Mar. 9, 1999) (unreported) (holding that complaint did not comply with Rule 8(a) where it did "not identify which of the numerous [d]efendants . . . performed the alleged conduct").

Third, the FAC does not sufficiently allege that the Nationwide Defendants are in a joint venture with Titan such that Plaintiff's injuries are traceable to each of them. "In New Mexico, a party may be liable for the negligence of its joint venturers." *MS through Harris v. E. N.M. Mental Retardation Servs.*, No. 13-cv-628 RB/GBW, 2015 WL 13662789, at *15 (D.N.M. Jun. 16, 2015) (unreported) (citing *Schall v. Mondragon*, 1964-NMSC-107, ¶ 7, 393 P.2d 457, 460). To show a

joint venture, Plaintiff must show that each of the Nationwide Defendants "agree[d] to combine their money, property or time for conducting a particular business venture and agree[d] to share jointly in profits and losses, with the right of mutual control over the business enterprise or over the property." *Quirico v. Lopez*, 1987-NMSC-070, ¶ 9, 106 N.M. 169, 170, 740 P.2d 1153, 1155.

The FAC includes the following allegations regarding Plaintiff's joint venture theory:

13. Defendants worked together as a joint venture to sell automobile policies to New Mexico residents, including [Plaintiff]. They are jointly and severally liable for the acts and resulting damages contained herein.

14. As stated on the face of its insurance application, declaration pages, and letterhead, Defendant Titan Indemnity Company is a Nationwide Insurance Company . . . .

15. As stated on the face of its declaration page, Defendant Victoria Fire and Casualty Company underwrite [sic] Titan Insurance. . . .

16. Defendants publicly display the companies affiliated with Nationwide (which self-identifies as "Nationwide Mutual Insurance Company") on its website, Nationwide.com. The website lists the names of all Defendants.

17. In addition to and as a result of the above factual information, Defendants had an agreement to combine their money, property, time, resources, and sales, underwriting and claims adjusting services in the provision of insurance products and services.

(Doc. 1-1 at 8–9). To support these allegations, Plaintiff contends that she has shown a joint venture by (1) an affidavit (presented by Nationwide) signed by a compliance consultant for "Nationwide Mutual Insurance Company" and (2) a certificate of authenticity for the Policy signed by a "Nationwide Insurance associate." (Doc. 40 at 5; *see* Doc. 27-1 at 1, 4). Plaintiff also argues that publicly available information shows that Titan may be contacted through Nationwide.com e-mail addresses, and that Plaintiff's claim was denied by a claims adjuster who is listed as a Nationwide adjuster on a website. (*Id.* at 3).

While this evidence may show a connection between the Nationwide entities and Titan, it does not show that each of the Nationwide Defendants agreed to combine money, property or time, share in profits or losses, and share mutual control with Titan. *See Quirico*, 1987-NMSC-070, ¶ 9, 740 P.2d at 1155. Moreover, Plaintiff's allegations of a joint venture suffer from the same lack of

specificity discussed above, *i.e.*, Plaintiff neither alleges nor shows *which* of the six Nationwide Defendants are involved in the alleged joint venture and how so.

Finally, Plaintiff argues that New Mexico allows claims for breach of the covenant of good faith and fair dealing and violations of the UTPA and the UIPA against the Nationwide Defendants without a showing of a joint venture. (Doc. 40 at 2); *see, e.g., Dellaira v. Farmers Ins. Exch*., 2004-NMCA-132, ¶ 14, 102 P.3d 111, 115 (permitting "pursuit of [a breach of the covenant of good faith and fair dealing] claim where . . . an entity related to or pursuant to agreement with the insurer issuing the policy has control over and makes the ultimate determination regarding the merits of an insured's claim[.]"); *Bar J Sand & Gravel, Inc. v. Fisher Sand & Gravel Co*., No. 15-cv-228 SCY/KK, 2018 WL 3128991, at *13 (D.N.M. Jun. 26, 2018) (unreported) (construing the UTPA and holding that "a contract between the parties is not a necessary precursor to a [UTPA] claim"). § 59A-16-20 (prohibiting unfair practices "by an insurer or other person"); § 59A-16-1 (stating that the UIPA applies to "agents, brokers, solicitors, [and] adjusters"). Assuming such claims are cognizable, the Court finds, for the reasons stated above, that Plaintiff has not demonstrated that her injuries under these causes of action are traceable to each of the Nationwide Defendants.

In sum, Plaintiff has not met her burden to show or adequately allege that her injuries are traceable to each of the Nationwide Defendants. In these circumstances, Plaintiff does not have standing to pursue claims against the Nationwide Defendants and the Court does not have subject matter jurisdiction over them. *Carolina Cas. Ins. Co.*, 425 F.3d at 926 (absent a showing of standing, a court does not have subject matter jurisdiction). Further, Plaintiff's conclusory allegations of a joint venture, coupled with her lack of specificity about what each Nationwide Defendant allegedly did, are too threadbare to warrant leave to conduct jurisdictional discovery.

The Court will, therefore, dismiss the Nationwide Defendants without prejudice to Plaintiff's ability to file a properly supported motion to amend the FAC.

## VI. <u>THE TITAN MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Finally, in the Titan Motion, Titan seeks judgment as a matter of law on all of Plaintiff's claims. (Doc. 38 at 17). Titan argues that it is entitled to judgment as a matter of law because it legally sold and charged premiums for minimum limits UM/UIM coverage and, before *Crutcher*, it "did not have any obligation to provide any further disclosure or notification to Plaintiff about the operation of" this coverage. (Doc. 25 at 17–18). Titan also argues that the Offset Provision informed Plaintiff that the amount of her underinsured motorist coverage would be reduced by the amount the tortfeasor's insurer paid, negating Plaintiff's assertion that Titan misrepresented her UM/UIM coverage. (*Id*. at 5–6). Finally, Titan argues that certain claims must be dismissed for failure to state a claim. (*See, e.g.*, *id*. at 21–24). The Court will address Titan's first two arguments, then turn to the arguments specific to Plaintiff's nine claims.

### A.  *Crutcher* does not Bar Plaintiff's Claims Based on Misrepresentation.

Titan argues that it had no obligation to inform Plaintiff about the "operation of her minimum limits UM/UIM coverage" before *Crutcher* was decided because *Crutcher*'s holding is purely prospective. (Doc. 25 at 17–18). According to Titan, the *Crutcher* court expressly declared that its ruling applies prospectively by stating, "*hereafter*, the insurer shall bear the burden of disclosure to the policyholder" and that the New Mexico Supreme Court "*will now* require every insurer to adequately disclose the limitations of minimum limits UI/UIM policies in the form of an exclusion in its insurance policy." (Doc. 25 at 8 (quoting *Crutcher*, 2022-NMSC-001, ¶¶ 32, 33, 501 P.3d at 441) (emphasis added))). In essence, Titan maintains that it cannot be held accountable for misrepresenting the operation of minimum limits UI/UIM policies before the new rule stated in the *Crutcher* decision. (Doc. 25 at 8). The Court disagrees.

In New Mexico, "there is a presumption that the holding of a civil case will apply retroactively." *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 31, 228 P.3d 462, 473. However, the presumption does not apply where the decision stating a new rule includes "an express declaration . . . that the rule is intended to operate with modified or selective (or even, perhaps, pure) prospectivity." *Beavers v. Johnson Controls World Servs., Inc.*, 1994-NMSC-094, ¶ 22, 881 P.2d 1376, 1383.

Where there is no express declaration of prospectivity, courts weigh three factors to determine whether a ruling should not apply retroactively. The first factor examines whether the decision "establish[ed] a new principle of law, . . . [or decided] an issue of first impression whose resolution was not clearly foreshadowed." *Id*. ¶ 2, 881 P.2d at 1383; *Edenburn v. New Mexico Dep't of Health*, 2013-NMCA-045, ¶ 29, 299 P.3d 424, 433 ("The preliminary inquiry in a retroactivity analysis is whether the case in question announced a new rule."). If the decision did not state a new rule, the Court need not address the remaining factors. *Figueroa v. THI of New Mexico at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 41, 306 P.3d 480, 495 (stating that because the case considered by the court did not announce a new rule, retroactivity was not at issue); *Edenburn*, 2013-NMCA-045, ¶ 31, 299 P.3d at 433 (holding that since no new rule was stated, the court did not need to address the other *Beavers* factors). If the decision states a new rule, a court weighs "the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation," and also weighs "the inequity imposed by retroactive application." *Beavers*, 1994-NMSC-094, ¶ 23, 881 P.2d at 1383.

In *Crutcher*, the New Mexico Supreme Court considered a narrow two-part question as certified by United States District Judge Judith C. Herrera. The first part of the question was

whether "underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident [is] illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*." *Crutcher*, 2019 WL 12661166 at *4. The second part asked, if such coverage is "illusory," "may insurers charge a premium for that non-accessible underinsured motorist coverage?" *Id*.

The *Crutcher* court answered both questions affirmatively. First, it concluded that "this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit." *Crutcher*, 2022-NMSC-001, ¶ 2, 501 P.3d at 434. After reviewing New Mexico public policy as evidenced in the UM/UIM statutes, it then stated that "the sale of this type of insurance is reflective of the statutory scheme purposefully selected by the New Mexico Legislature, and thus is permitted despite being misleading." *Id*. ¶ 28, 501 P.3d at 440.

After answering the certified questions, the *Crutcher* court went on to impose a new requirement, explaining that,

> While charging premiums for minimum limits UM/UIM coverage may be legally permitted, this Court remains concerned about an average policyholder's understanding of the true limits of this type of coverage. . . . Therefore, hereafter, the insurer shall bear the burden of disclosure to the policyholder that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance. . . . As such, we will now require every insurer to adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy. If the insurer provides adequate disclosure, it may lawfully charge a premium for such coverage.

*Crutcher*, 2022-NMSC-001, ¶¶ 29, 32, 33, 501 P.3d at 440-41. In other words, insurers may no longer charge premiums for minimum limits UM/UIM coverage unless they include in their

policies the exclusion *Crutcher* demands. *Id.*; *see also id*. ¶ 2, 501 P.3d at 434 ("Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage.").

*Crutcher* expressly declared that this requirement applies prospectively by stating that the requirement shall apply "now" and "hereafter." *Id*. at ¶¶ 32, 33, 501 P.3d at 441. Moreover, this new requirement was not clearly foreshadowed by the statute or case law. The purpose of the new rule—"to allow purchasers to make a fully informed decision when selecting UM/UIM coverage"—is not served by retroactive application because Plaintiff already purchased UM/UIM coverage. *Id*. at ¶ 32, 501 P.3d at 441. And finally, retroactive application of this requirement would be inequitable.

*Montano v. Allstate Indemnity Company* is instructive on this point. In *Montano*, the issue before the New Mexico Supreme Court was whether an "anti-stacking" provision in an insurance policy was ambiguous and thus unenforceable. 2004-NMSC-020, ¶ 1, 92 P.3d 1255. After reviewing the relevant statutes and case law, the court held that a "new approach" was necessary to stem "protracted litigation over the validity of anti-stacking clauses in this State" and to "fulfill[] the reasonable expectations of the insured and ensur[e] that the insured receive what he or she pays for." *Id*. ¶¶ 17, 18, 21, 92 P.3d at 1260–61. The "new approach" required insurance companies to "obtain written rejections of stacking [coverages] in order to limit [their] liability based on an anti-stacking provision." *Id*. ¶ 19, 92 P.3d at 1260. Because the new rule required insurers to modify their policies and practices, the *Montano* court held that the rule applied prospectively because it was a "new, and not easily foreshadowed, aspect to our jurisprudence on stacking and . . . it would be inequitable to apply it against [the insurer] before it has had an opportunity to alter its policy language[.]." *Id*. ¶ 22, 92 P.3d at 1261. Notably, however, although the new rule applied prospectively, the court analyzed whether the defendant's anti-stacking provisions at issue were

ambiguous using "traditional" ambiguity principles. *Id*. In other words, while *Montano* announced a new, prospective rule, that rule did not relieve the defendant from liability for ambiguous policy provisions that pre-dated it. *Id*.

Like in *Montano*, *Crutcher* set forth a new procedure designed to address the misleading nature of minimum limits UIM coverage and to forestall suits like Plaintiff's in the future. But the *Crutcher* court's statements that minimum limits underinsured motorist coverage can be misleading and that insurers can legally sell such coverage did not announce a new rule. Rather, sale of minimum limits UM/UIM coverage is consistent with the "statutory scheme purposefully selected by the New Mexico Legislature." *Crutcher*, 2022-NMSC-001, ¶ 28, 501 P.3d at 440. In addition, the misleading nature of such coverage was clearly foreshadowed by 1985 in *Schmick*, 1985-NMSC-073, ¶ 30, 704 P.2d at 1100, and was expressly identified by 2010, in *Progressive Nw. Ins. Co. v. Weed Warrior Svc.*, 2010-NMSC-050, ¶ 10, 245 P.3d 1209, 1212–13, in which the court observed:

> If the tortfeasor carried the statutory minimum of liability insurance and the injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000. The injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of "UIM" in the statute superfluous. An insured carries UIM coverage only if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000.

*Id*. (Citation omitted.).

The *Crutcher* court acknowledged that *Weed Warrior* "identified and highlighted" the "impossibility" of collecting on a UM/UIM policy when the insured and the tortfeasor both hold minimum limits coverage and relied on *Weed Warrior*'s reasoning, which was in turn based on New Mexico's UM/UIM statutes, to reach its conclusion. *Crutcher*, 2022-NMSC-001, ¶¶ 21, 22, 501 P.3d at 438. When a decision is based on "statutory and regulatory interpretation drawing on explicit language in the relevant provisions," it does not state a new rule even if it decides an issue

of first impression, because "the parties could have foreseen th[e] result." *Marckstadt*, 2010-NMSC-001, ¶ 31, 147 N.M. at 689, 228 P.3d at 473. Because decisions well before *Crutcher* acknowledged that UM/UIM statutes require "an insurer to sell minimum limits UM/UIM coverage to a policy holder and only provide coverage for uninsured motorist coverage," Titan could have foreseen *Crutcher's* holding that the sale of such coverage is lawful but misleading. *See Crutcher*, 2022-NMSC-001, ¶¶ 28, 33, 501 P.3d at 440, 441.

More significantly for purposes of this case, *Crutcher* did not state a new rule that insurers may not mislead consumers or misrepresent their policies. New Mexico courts have long held that insurers have a duty to meaningfully inform consumers about their coverage options. Indeed, *Weed Warrior* not only anticipated the scenario at issue here, but also expressly held that courts should not "impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of UM/UIM coverage desired or required *without first receiving information from the insurance company*." *Weed Warrior*, 2010-NMSC-050, ¶ 13, 245 P.3d at 1213 (emphasis added); *see also Marckstadt*, 2010-NMSC-001, ¶ 16, 228 P.3d at 468 (stating that "the insurer is required to *meaningfully offer* [UM/UIM] coverage and the insured must knowingly and intelligently act to reject it before it can be excluded from a policy"). In addition, the UTPA and UIPA "specifically prohibit the making of any untrue, misleading, or deceptive statements in connection with the sale of any product." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 65, 68 P.3d 909, 928; *see* §§ 57–12–2(D), 59A–16–4, 59A–16–5. The *Crutcher* court acknowledged as much by stating that, even though the Legislature authorized the sale of minimum limits UM/UIM coverage, its purpose "was not to sanction the deception of those consumers in their selection of policies and coverage levels." *Crutcher*, 2022-NMSC-001, ¶ 26, 501 P.3d at 439. The court rejected the argument that mere compliance with the statute barred misrepresentation

claims, stating, "[W]e find no merit in [the] . . . argument that the language of the statute provides immunity from claims that [an insurance company] misrepresented the coverage available to consumers[.]" *Id*.

Thus, reading the *Crutcher* opinion as a whole, the Court concludes that the use of "hereafter" and "now" applies to *Crutcher*'s new mandate for *how* disclosures about minimum limits UIM coverage must be made going forward by insurers who choose to continue charging a premium for such coverage, not to requirements that insurers must provide accurate information about their policies and avoid misleading customers about their options, which pre-date the *Crutcher* case. Like in *Montano*, the *Crutcher* court's new rule does not supplant the analysis for misrepresentation claims that pre-existed *Crutcher*. Since *Crutcher* did not state a new rule as to those requirements, there is no reason to continue to analyze whether they apply retroactively. *See Edenburn*, 2013-NMCA-045, ¶ 31, 299 P.3d at 433. *Crutcher* does not preclude Plaintiff's claims based on Titan's alleged misrepresentation of her coverage.

## B.  The Offset Provision does not Entitle Titan to Judgment as a Matter of Law.

Titan next argues it is entitled to judgment as a matter of law because the Offset Provision informed Plaintiff how the offset rule operates. (Doc. 25 at 5–7). Titan asserts that "[t]here cannot be a misrepresentation or misleading statement where the allegedly concealed facts were *disclosed* to Plaintiff." (*Id*. at 6 (emphasis in original)). This argument misses the mark. Plaintiff's allegations are not focused solely on the Offset Provision. Rather, Plaintiff alleges that Titan affirmatively misled her in its application and application process and that its materials and statements misrepresented the coverage she purchased, leading her to believe that she would recover under her policy for injuries incurred in an accident with an underinsured motorist. (*See, e.g.*, Doc.1-1 at 11, 23). In this context, and construing Plaintiff's well-pled allegations in the FAC as true, and in

the light most favorable to her, material facts are in dispute precluding judgment as a matter of law, notwithstanding the Offset Provision.

The Offset Provision states that "[c]overage limits will be reduced by any . . . sums paid by or for any liable parties, including, with respect to an uninsured motor vehicle which is underinsured: (1) reimbursement for Personal Injury Protection benefits; (2) proceeds paid to medical providers; or (3) proceeds received as attorney fees." (Doc. 25-1 at 27). Under the circumstances she alleges, Plaintiff may not have understood from this provision that if she purchased only the statutory minimum UM/UIM coverage, it would not cover losses for damages in excess of $25,000, making "[c]ollection of UIM insurance . . . practically impossible for [her as a] minimally insured motorist[.]" *Crutcher*, 2022-NMSC-001, ¶ 20, 501 P.3d at 438. As the *Crutcher* court observed,

> [i]f a person pays for something called 'underinsured motorist' insurance, [it is] reasonable for the person to be under the impression that he or she is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the costs of the insured's injuries.

*Id.* ¶ 30, 501 P.3d at 440. The *Crutcher* court also stated that "[m]erely reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." *Id*. ¶ 30, 501 P.3d at 440–41 (quoting *Apodaca*, 2019 WL 231757, at *7).

Consistent with *Crutcher*, courts in this district have held that policy provisions restating the *Schmick* offset rule are insufficient to inform insureds that they may not have UIM coverage in certain circumstances. *See, e.g.*, *Belanger,* 2022 WL 611487, at *9 (observing that a provision tracking the offset rule did not "make it clear enough for a reasonable consumer to understand that she may never reap the benefits of the coverage she selected"); *Schwartz*, 2018 WL 4148434, at *6 (same). Like those courts, this Court concludes that, when viewed from the standpoint of a

23

reasonably intelligent layperson, the Offset Provision on its own would not inform an average purchaser of insurance that by choosing to purchase only the statutory minimum amount of UM/UIM coverage, she would likely never reap the benefits of the underinsured motorist coverage. Thus, though pertinent to Plaintiff's contentions that Titan misled her, the Offset Provision by itself neither negates these contentions nor entitles Titan to judgment as a matter of law on claims premised on allegations that Titan's application, materials, and statements were misleading, misrepresented the true value of minimum limits UIM coverage for which it collected premiums, failed to properly inform Plaintiff of the offset rule's consequences for a minimally insured motorist, and failed to properly disclose that the UIM coverage she purchased was "illusory" as *Crutcher* used that term. *See Crutcher*, 2022-NMSC-001, ¶ 2, 501 P.3d at 434 (stating that a minimum limits UM/UIM insurance policy "is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit"); (Doc. 1-1 at 9-11, ¶¶ 25-33).

**C.  The Court will Grant in Part and Deny in Part the Titan Motion.**

**1.  Negligence (Claim 1) and Negligent Misrepresentation (Claim 7)**

Titan argues that *Crutcher* forecloses Plaintiff's negligence and negligent misrepresentation claims in their entirety. (Doc. 25 at 20-22). First, Titan argues that the negligence and negligent misrepresentation claims must be dismissed because *Crutcher's* new rule requiring disclosure of the operation of the *Schmick* offset rule applies prospectively and it therefore had no duty to disclose such operation before *Crutcher* was decided. (*Id.* at 22). The Court has concluded, however, that an insurer's duties to inform its consumers and avoid misleading them pre-date *Crutcher* and that *Crutcher* did not state a new rule that immunizes Titan for past conduct. Hence, this argument is unavailing.

In addition to alleging that Titan misled her in the sale of UM/UIM coverage, Plaintiff alleges as part of her negligence claim that Titan "had a duty to ensure [Plaintiff] . . . would not be sold illusory and/or misleading underinsured coverage" and "a duty to provide [Plaintiff] coverage for which a premium was charged and collected." (Doc. 1-1 at 17, ¶¶ 71, 72). It is undisputed that Titan sold Plaintiff minimum limits UM/UIM coverage and collected a premium for it. (*Compare* Doc. 1-1 at 9 *with* Doc. 6 at 4). *Crutcher* forecloses Plaintiff's negligence claim to the extent it rests on these allegations because it confirmed that "UM/UIM coverage at the minimum level is permitted because the law not only allows, but requires, it to be sold as was done here." *Crutcher*, 2022-NMSC-001, ¶ 33, 501 P.3d at 441. The Court will therefore grant the Titan Motion as to the alleged duties foreclosed by *Crutcher* set forth in paragraphs 71 and 72 of the FAC.

However, because Titan denies Plaintiff's allegations at the root of her negligence and negligent misrepresentation claims and has not "clearly established that no material issue of fact remains to be resolved," judgment on the pleadings would be inappropriate at this stage as to Claim 7 and the remainder of the allegations in Claim 1.[6] *Sanders*, 689 F.3d at 1141; (*Compare* Doc. 1-1 at 11-12 *with* Doc. 6 at 5-6).

## 2. Unjust Enrichment (Claim 6)

"One who has been unjustly enriched at the expense of another may be required by law to make restitution. This quasi-contractual obligation is created by the courts for reasons of justice and equity[.]" *Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 8, 793 P.2d 855, 857

---

[6] Having meticulously reviewed the allegations in the FAC, it appears to the Court that *Crutcher* precludes some of Plaintiff's allegations not specifically addressed herein based on the sale of UIM coverage and the charging of a premium for it. Unless otherwise noted, where Titan does not make arguments specific to an allegation or its infirmities, the Court declines to scrutinize and address those allegations. *See Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (brackets omitted). However, Plaintiff would do well to parse the impact of *Crutcher* on each allegation if she chooses to seek leave to amend the FAC.

(quotation marks omitted). "[T]o prevail on an unjust enrichment claim, a party must demonstrate that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allow[ing] the other to retain the benefit would be unjust." *Res. Assocs. Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free Sch. Dist.*, 193 F.Supp.3d 1200, 1246-47 (D.N.M. 2016) (quotation marks omitted); *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 54, 260 P.3d 414, 428–29.

Titan argues that *Crutcher* forecloses Plaintiff's unjust enrichment claims because it "reaffirms the application of the *Schmick* offset rule and holds that Titan 'may lawfully charge a premium' for minimum limits UM/UIM coverage." (Doc. 25 at 25). And, indeed, Plaintiff's unjust enrichment claims premised on Titan's application of the *Schmick* offset rule and non-payment of UM/UIM benefits to which she was not entitled, (Doc. 1-1 at 25-26, ¶¶ 118, 119), and her claims seeking disgorgement of the value of UIM benefits Titan "retained," (*id.*, ¶ 120), fail to state a claim on which relief may be granted. But nothing in *Crutcher* stands for the proposition that a party to a contract may mislead the other party so long as the contract itself is legal. Thus, while the Court is convinced that in its current iteration the FAC fails to state a claim for unjust enrichment on which relief may be granted, the Court will dismiss this claim without prejudice to Plaintiff's ability to file a properly supported motion to amend should she choose to do so.[7]

### 3.  Violation of New Mexico's Unfair Trade Practices Act (Claim 2)

To state a claim under the Unfair Trade Practices Act, a complaint must allege:

(1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease,

---

[7] In considering whether to seek leave to amend the FAC to assert unjust enrichment claims based on a theory that Titan was unjustly enriched by "retaining premium charges that were unearned," Plaintiff should be mindful of the New Mexico Supreme Court's conclusion that while "minimum limits UM/UIM coverage is illusory because it is misleading to the average insurance purchaser, [it] nevertheless . . . still retains some value for policyholders." *Crutcher,* 2022-NMSC-001, ¶ 27, 501 P.3d at 440. For example, there is value in the $25,000 of UM coverage Plaintiff purchased here.

rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 166 P.3d 1091, 1093 (citing § 57-12-12(D)). "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Diversey Corp. v. Chem-Source Corp.*, 1998-NMCA-112, ¶ 17, 965 P.2d 332, 338. A statement is "knowingly made" if "a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 17, 811 P.2d 1308, 1311-12. A communication can be misleading even if it is not false. *Young v. Hartford Cas. Ins. Co.*, 503 F.Supp.3d 1125, 1184 (D.N.M. 2020).

In Claim 2, Plaintiff alleges that Titan "fail[ed] to provide insurance applications and policies containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance[,]" and that "[Titan] or its agents knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico[.]" (Doc. 1-1 at 18–19). Plaintiff also alleges that "[Titan] or its agents took advantage of its customers' lack of knowledge, ability, experience[,] or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for illusory and/or misleading underinsured motorist coverage." (*Id*. at 19). Titan denies these allegations. (Doc. 6 at 10).

Titan argues that Plaintiff has failed to plead facts showing that Titan "knowingly made" a false or deceptive representation because, under § 66-5-301 and *Crutcher*, it is required to offer and sell minimum limits UIM coverage. (Doc. 25 at 24). However, the fact that Titan's sale of such coverage was lawful does not address whether Titan misled Plaintiff in the process. Plaintiff

has adequately pleaded this element by alleging that "[s]ince the New Mexico Supreme Court's opinion in [*Weed Warrior*, Titan] has been on notice that underinsured motorist policies provide essentially no coverage at minimal limits and misleading coverage at higher limits[.]" (Doc. 1-1 at 19); *see Stevenson,* 1991-NMSC-051, ¶ 17, 811 P.2d at 1311–12 (stating that this element may be established by an allegation that the defendant "in the exercise of reasonable diligence should have been aware that the statement was false or misleading"). Moreover, Titan denies this factual allegation, thereby precluding judgment on the pleadings in its favor.[8] (Doc. 6 at 10).

Titan also maintains that Plaintiff has not pleaded facts showing that she suffered a loss due to Titan's conduct. (Doc. 25 at 23–24). Plaintiff alleges that:  she incurred over $50,000 in damages from the accident at issue; she "believed that, by paying a premium for underinsured motorist coverage, [she] would receive underinsured motorist coverage at those same specific dollar amounts and limits"; Titan "collected a premium of $74 for the [UM/UIM] motorist coverage"; and, she "received nothing from [Titan][.]" (*Id*. at 9, 11, 12, 22). Construing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged that she suffered a loss because Titan deprived her of an opportunity to purchase greater coverage by misrepresenting the coverage she was actually purchasing. The Titan Motion will be denied as to Plaintiff's claim for Violations of the New Mexico Unfair Trade Practices Act.

---

[8] In so holding, the Court construes Plaintiff's UTPA claims as being premised on her allegations that Titan made false and misleading written and oral statements to her in connection with the sale of the Policy. (*See generally* Doc. 1-1 at 18-20, ¶¶ 79-86). If she were to base these claims on allegations that Titan wrongfully sold her minimum limits UM/UIM coverage, *Crutcher* would bar the claims, because the *Crutcher* court held that the sale of such coverage is lawful. *See Crutcher*, 2022-NMSC-001, ¶ 28, 501 P.3d at 440 ("[T]he sale of this type of insurance is reflective of the statutory scheme purposefully selected by the New Mexico Legislature, and thus is permitted despite being misleading.").

### 4.   Violation of New Mexico's Unfair Insurance Practices Act (Claim 3)

The New Mexico Unfair Insurance Practices Act, prohibits "any practice which in this article is defined or prohibited as, or determined to be, an unfair method of competition, or unfair or deceptive act or practice, or fraudulent." § 59A-16-3. Under the UIPA,

> [n]o person shall make, publish, issue or circulate any estimate, illustration, circular, statement, sales presentation or comparison which:
> A. misrepresents the benefits, advantages, conditions or terms of any policy; . . .
> E. uses any name or title of any policy or class of policies misrepresenting the true nature thereof; . . . or
> G. fails to disclose material facts reasonably necessary to prevent other statements made from being misleading.

§ 59A-16-4. In addition, § 59A-16-20 lists 15 specific prohibited practices. Plaintiff alleges that Titan violated the UIPA by misrepresenting the operation of her underinsured motorist coverage. (Doc. 1-1 at 21); *see* § 59A-16-20(A) (prohibiting "misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue"). For the reasons discussed in Sections VI.A. and B., above, *Crutcher* does not bar such claims.

However, Plaintiff also alleges that (1) Titan "compelled [her] to institute litigation to recover amounts due under the [Policy] by offering substantially less (i.e., nothing on the first level of $25,000.00 of UIM coverage withheld based on the *Schmick* offset) than the amounts . . . that will ultimately be recovered . . . in violation of § 59A-16-20(G)"; (2) Titan "failed to exercise good faith [and] unreasonably delayed payment"; and, (3) Titan's "failure to pay anything on [Plaintiff's] first $25,000.00 level of underinsured motorist claims was unfounded, unreasonable, and in bad faith." (Doc. 1-1 at 21).

*Crutcher* does bar Plaintiff's claims resting on allegations that Titan acted unreasonably or in bad faith when it declined to pay Plaintiff benefits under the Policy based on the offset rule. Plaintiff acknowledges in the FAC that Titan "denied [her] claim because (1) [Titan] deducted from the coverage it owed [her] any sums paid by the tortfeasor's insurer and (ii) the tortfeasor's

liability coverage limits equaled [her] underinsured motorist coverage limits." (Doc. 1-1 at 12). In other words, both Plaintiff and the tortfeasor held minimum limits coverage and Titan, following *Schmick*, offset Plaintiff's claim with the amount the tortfeasor's insurer paid. In doing so, Titan acted in accordance with two principles the *Crutcher* court noted: first, "UM/UIM coverage at the minimum level is permitted because the law not only allows, but requires, it to be sold[,]" and second, the "amount [of coverage held by the insured] must be offset by available liability proceeds." *Crutcher*, 2022-NMSC-001, ¶¶ 19, 33, 501 P.3d at 437, 441 (quotation marks omitted).

Hence, taking the allegations in the FAC to be true, Titan did not act unreasonably or in bad faith when it applied the offset rule in accordance with the law, nor did its denial of Plaintiff's claim necessitate the present litigation. The Titan Motion will be granted as to these allegations and denied as to Plaintiff's UIPA claim resting on misrepresentation.

**5.   Reformation of the Insurance Policy (Claim 4)**

Claim 4 of the FAC asserts that, because of the "inequitable failure of [Defendants] to inform" Plaintiff of the operation of her UIM coverage, the Policy does not "express [Plaintiff's] intentions and reasonable beliefs" and, consequently, "[t]he court should reform the insurance contracts [between Titan and Plaintiff] to conform to [Plaintiff's] intentions and reasonable beliefs . . . that [she] would receive the underinsured motorist coverage that [she] contracted for and for which [Titan] collected premiums." (Doc. 1-1 at 23). Thus, Plaintiff asks the Court to reform her UM/UIM coverage to be consistent with her expectations, *i.e.*, that she would receive up to $25,000 of UM/UIM coverage from Titan in addition to the amount she received from the tortfeasor's insurer. (*See* Doc. 1-1 at 9, 23, 39 (Declarations page), 41 (Plaintiff's demand letter)).

In its Motion, Titan argues that Plaintiff's reformation claim should be dismissed as a matter of law because *Crutcher* forecloses the reformation Plaintiff seeks. (Doc. 25 at 18–19). In

response, Plaintiff counters that factual disputes preclude judgment on the pleadings. (Doc. 31 at 12).

Under New Mexico law, an instrument may be reformed if there has been "(1) mutual mistake, or (2) a mistake by one party accompanied by fraud or other inequitable conduct by the other party." *Chromo Mountain Ranch P'ship v. Gonzales*, 1984-NMSC-058, ¶ 7, 681 P.2d 724, 725 (quoting *Kimberly, Inc. v. Hays*, 1975-NMSC-036, ¶ 12, 537 P.2d 1402, 1406).

> If a party's manifestation of assent is induced by the other party's fraudulent misrepresentation as to the contents or effect of a writing evidencing or embodying in whole or in part an agreement, the court at the request of the recipient may reform the writing to express the terms of the agreement as asserted, . . . if the recipient was justified in relying on the misrepresentation[.]

*Id*. ¶ 9, 681 P.2d at 726 (quoting Restatement (Second) of Contracts Section 166 (1979)).

Even though there may be disputed facts relating to Plaintiff's reformation claim, the Court will dismiss Claim 4 because the reformation that Plaintiff seeks is contrary to New Mexico law and public policy. As explained in *Crutcher*, "only if the motorist purchases higher than minimum liability coverage may higher than minimum UM/UIM coverage be purchased." 2022-NMSC-001, ¶ 17, 501 P.3d at 437; *see* §§ 66-5-215(A)(1)-(2), 66-5-301(A)-(B). Here, Plaintiff purchased only $25,000 of liability coverage, but seeks $50,000 in UM/UIM coverage. Thus, reformation of the Policy as Plaintiff requests would result in Plaintiff receiving greater UM/UIM coverage for herself than the liability coverage she purchased to compensate others. New Mexico's statutes do not allow this result. *See Crutcher*, 2022-NMSC-001, ¶ 28, 501 P.3d at 440 (stating that, although it is "more equitable [to allow] the injured insured [to] collect[] all proceeds for which . . . a premium has been paid . . . New Mexico's [UM/UIM] statute . . . does not allow for such recovery") (quoting *Schmick*, 1985-NMSC-073, ¶ 31, 704 P.2d at 1100). Contracts that are contrary to § 66-5-301 are void. *Farmers Ins. Co. of Arizona v. Sandoval*, 2011-NMCA-051, ¶ 20, 253 P.3d 944,

950 ("[C]ontractual exclusions that conflict with the mandatory requirements of [§] 66–5–301 are void."); *see Schmick*, 1985-NMSC-073, ¶ 7, 704 P.2d at 1094 (holding that § 66–5–301 "will be read into the [insurance] policies and, to the extent that the policy provisions conflict with the statute, the statute prevails").

Moreover, these requirements effectuate a policy decision of the New Mexico Legislature, which, by adopting the "gap theory" of UM/UIM insurance, "intended to 'put an injured insured [driver] in the same position [the driver] would have been in had the tortfeasor had liability coverage in an amount equal to the [UM/UIM] protection purchased for the insured's benefit." *Crutcher*, 2022-NMSC-001, ¶ 19, 501 P.3d at 437 (quoting *Schmick*, 1985-NMSC-073, ¶ 10, 704 P.2d at 1095). Here, "the tortfeasor had liability coverage in an amount equal to the [UM/UIM] protection" Plaintiff purchased for her own benefit. *Id.* As such, Plaintiff received from the tortfeasor the amount to which she would have been entitled under the UM/UIM statutes if the tortfeasor had not had such coverage. There was no gap between the amount the tortfeasor paid and the UM/UIM coverage Plaintiff purchased. That Plaintiff believed she had purchased more coverage, or would have purchased more had she been better informed, does not change this analysis. To reform the Policy according to Plaintiff's belief would render the Policy contrary to New Mexico law and policy, and therefore void.

The cases on which Plaintiff relies are distinguishable because in each of these cases the policy at issue was reformed to *conform* to the law. (Doc. 31 at 12). For instance, in *Marckstadt*, the New Mexico Supreme Court held that "an insurer must obtain a written rejection of UM/UIM coverage from the insured in order to exclude it from an automobile liability insurance policy under Section 66–5–301 and 13.12.3.9 NMAC." 2010-NMSC-001, ¶ 4, 228 P.3d at 464. If the insurer does not do so, "UM/UIM coverage will be read into an automobile liability policy." *Id.* ¶

18, 228 P.3d at 469. This was so because "[§] 66-5-301 makes UM/UIM coverage the default" if not rejected. *Id*. ¶ 15, 228 P.3d at 468. Hence, if an insurer does not obtain a written rejection of UM/UIM coverage, the policy at issue can be reformed to conform to § 66-5-301. *Id.* ¶ 18, 228 P.3d at 469 (stating that the "necessity of meeting the statutory and regulatory requirements" prevails over the parties' freedom to contract). Similarly, in *Jimenez v. Foundation Reserve Insurance Company,* a provision limiting stacking of policies was held to be inconsistent with public policy where the insured had paid premiums for liability coverage for multiple vehicles. 1988-NMSC-052, ¶ 1, 757 P.2d 792, 793. The insured was therefore permitted to stack his UM/UIM coverages. *Id*.; *see also Jordan v. Allstate Ins. Co*., 2010-NMSC-051, ¶ 22, 245 P.3d 1214, 1221 (stating that, if the insurer does not properly offer UM/UIM coverage and obtain a valid rejection, "the policy will be reformed to provide UM/UIM coverage *equal to the liability limits*") (emphasis added); *Gulbransen v. Progressive Halcyon Ins. Co*., 2010-NMCA-082, ¶ 10, 241 P.3d 183, 186 ("[A]bsent a valid rejection, our case law provides that statutorily mandated UM and UIM coverage must be read into the insurance policy *in amounts equal to the liability limits of the policy*.") (emphasis added).

Here, in contrast, Plaintiff's Policy currently complies with § 66-5-301, and the requested reformation would render it non-compliant. The Titan Motion will be granted as to Claim 4.

### 6.   Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 5)

"New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 7, 188 P.3d 1200, 1203. "New Mexico recognizes this duty of good faith between insurer and insured." *Schwartz*, 2018 WL 4148434, at *9. "The implied covenant of good faith and fair dealing requires that neither

party do anything that will injure the rights of the other to receive the benefit of their agreement." *Id.* (quotation marks omitted). A party breaches the implied covenant when it "wrongfully and intentionally use[s] the contract to the detriment of the other party." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 64, 858 P.2d 66, 82, *holding limited on other grounds by Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶¶ 34-35, 218 P.3d 75, 85.

In the FAC, Plaintiff alleges that Titan breached the implied covenant of good faith and fair dealing by:

> a.  Failing to properly inform [Plaintiff] of the illusory and/or misleading coverage it solicited and sold;
>
> b.  Charging a premium for coverage that was not provided;
>
> c.  Failing and refusing to disclose, admit and acknowledge some amount of underinsured motorist coverage;
>
> d.  Failing and refusing to fairly investigate, process, determine and decide [Plaintiff's] claims; and,
>
> e.  Failing and refusing to mediate, resolve, and settle [Plaintiff's] underinsured motorist claims.

(Doc. 1-1 at 24, ¶ 113). In other words, except for the acts alleged in subparagraph (a), Plaintiff asserts that Titan breached the implied covenant by selling her minimum limits UM/UIM coverage and applying the *Schmick* offset rule to deny her claim for underinsured motorist benefits.

Except for the acts alleged in subparagraph (a), these claims fail for two reasons. First, "[t]he implied covenant is aimed at making effective [an] agreement's promises. Thus, it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 51, 68 P.3d 909, 925. Here, Plaintiff has wholly failed to allege that, by selling her minimum limits UM/UIM coverage and applying the offset rule to deny her claim, Titan sought to prevent the Policy's

performance or injure her right to receive its benefits. On the contrary, it is undisputed that Titan was simply applying the Policy's terms when it denied Plaintiff's claim. (*See, e.g.*, Doc. 1-1 at 12-13, ¶¶ 47, 49). Again, that Plaintiff believed the Policy provided more coverage than it did, or that she would have purchased more coverage than it provided had she been better informed, fails to change this analysis.

Second, and as *Crutcher* expressly recognized, the sale of minimum limits UM/UIM coverage "is reflective of the statutory scheme purposefully selected by the New Mexico Legislature, and thus is permitted despite being misleading." *Crutcher*, 2022-NMSC-001, ¶ 28, 501 P.3d at 440. And, under the *Schmick* offset rule, "the amount of underinsurance purchased for the insured's benefit . . . *must* be offset by available liability proceeds." *Id.*, ¶ 19, 501 P.3d at 437 (emphasis added) (brackets omitted). In these circumstances, New Mexico law and public policy operate to bar Plaintiff's claims that Titan breached its duty of good faith and fair dealing by selling her minimum limits UM/UIM coverage and applying the offset rule to deny her claim for underinsured motorist benefits. The Court will therefore grant the Titan Motion as to the claims asserted in subparagraphs (b) through (e) of paragraph 113 of the FAC.

However, the Court will deny the motion as to Plaintiff's claims for breach of the implied covenant of good faith and fair dealing based on her allegation that Titan failed to properly inform her of the illusory or misleading coverage it solicited and sold. (Doc. 1-1 at 24, ¶ 113(a)). Titan's arguments in opposition to Plaintiff's implied covenant claims are limited to the lawfulness of the Policy and the *Crutcher* court's decision, neither of which operates to bar the claims insofar as they are based on allegations that Titan misled or failed to adequately inform Plaintiff. (*See* Doc. 25 at 20). On the contrary, the *Crutcher* court expressly "refuse[d] to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory

provisions, much less the offset rule[.]" *Crutcher*, 2022-NMSC-001, ¶ 26, 501 P.3d at 439. And while there may be other legal grounds for challenging these claims,[9] the Court declines to decide complex questions of New Mexico insurance law without invitation or the benefit of full briefing. Moreover, disputes of fact about Titan's written and oral representations preclude judgment as a matter of law on these claims. The Court will therefore deny the Titan Motion as to the claims asserted in subparagraph (a) of paragraph 113 of the FAC.

## 7.  Declaratory Judgment (Claim 8)

In Claim 8, Plaintiff seeks an order "[e]stablishing the respective rights and obligations of the parties with respect to the claims set forth herein." (Doc. 1-1 at 27). Titan maintains that Plaintiff's declaratory judgment claim must be dismissed because it is derivative of her other claims and, once the other claims are dismissed pursuant to the Titan Motion, Claim 8 should be dismissed as well. (Doc. 25 at 26). However, because the Court will deny the Titan Motion in part, bases for a derivative claim remain. The Titan Motion will be denied as to Plaintiff's Declaratory Judgment claim.

## 8.  Injunctive Relief

In the FAC Plaintiff also seeks an order enjoining Defendants "from continuing practices that violate the duties[] and contractual legal obligations owed to [Plaintiff] and Class Members." (Doc. 1-1 at 27; *see* Doc. 31 at 15 (stating that Plaintiff's "request for injunctive relief seeks to enjoin Defendants from collecting premiums for the sale of illusory underinsured motorist coverage without adequate disclosure")). The Court will dismiss this claim because Plaintiff lacks standing to assert a claim for prospective injunctive relief.

---

[9] *See, e.g., Azar*, 2003-NMCA-062, ¶ 53, 68 P.3d at 925 ("Because the implied covenant of good faith and fair dealing depends upon the existence of an underlying contractual relationship, Plaintiff[] may not recover under the theory for omissions occurring before the existence of the policy.").

"The Tenth Circuit makes clear that the 'named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future.'" *Soseeah v. Sentry Ins.*, No. 12-cv-1091 RB/KK, 2016 WL 7435792, at *10 (D.N.M. Sept. 6, 2016) (quoting *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010). Plaintiffs "seeking prospective relief must show more than past harm or speculative future harm.'" *Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) (quoting *Riggs v. City of Albuquerque*, 916 F.2d 582, 586 (10th Cir. 1990)); *see United States v. Oregon State Med. Soc.*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations."). Further, "the standing threshold for equitable relief is not met by asserting that there are others in a prospective class who are at risk of being" harmed in the future. *Williams v. Foremost Ins. Co.*, 102 F. Supp. 3d 1230, 1242 (D.N.M. 2015); *see generally Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (holding that a plaintiff generally must assert "his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties") (quotation marks omitted).

Here, Plaintiff alleges past harm arising from Titan's sale of the Policy and subsequent refusal to provide coverage to which she believed she was entitled under it. (*See generally* Doc. 1-1). She does not allege that she is suffering continuing harm or is likely to suffer future harm due to Titan's alleged misconduct. (*Id.*). Nor would such an allegation be credible. On the contrary, Plaintiff's FAC makes inescapably clear that she now knows she would most likely receive nothing from her insurer if she were involved in another accident with a tortfeasor who carries liability coverage equal to her UM/UIM coverage. Hence, Plaintiff has not established that she has standing to assert a claim for prospective injunctive relief. Moreover, in her response to the Titan Motion, Plaintiff acknowledges that injunctive relief is no longer necessary because "*Crutcher* has

essentially answered [her] claim for injunctive relief by holding that [insurers] may only charge a premium[] for what has been labeled as basically worthless UIM coverage, if, and only if, an adequate disclosure is made." (Doc. 31 at 15). The Court will grant the Titan Motion as to Plaintiff's claim for injunctive relief.

### 9. Punitive Damages

Finally, Titan argues in its Motion that Plaintiff has failed to plead sufficient facts to support her punitive damages claim. (Doc. 25 at 26). As explained below, the Court disagrees.

Plaintiff seeks punitive damages in relation to her claims for negligence and breach of the implied covenant of good faith and fair dealing. (Doc. 1-1 ¶¶ 77, 115–16). Punitive damages "may be appropriate where a defendant has the requisite culpable mental state, which includes willfulness or recklessness." *Tellez-Giron v. Conn's Appliances, Inc.*, No. 17-cv-1074 WJ/SCY, 2018 WL 611361, at *3 (D.N.M. Jan. 29, 2018) (unreported) (citing N.M. Civ. UJI 13-1827); *see also Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 881 P.2d 11, 14 ("To be liable for punitive damages, a wrongdoer must have some culpable mental state and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level."). "Recklessness in the context of punitive damages refers to 'the intentional doing of an act with utter indifference to the consequences.'" *Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1238 (D.N.M. 2019) (quoting *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 28, 987 P.2d 386, 397 (overruled on other grounds)), *aff'd*, No. 19-2073, 2021 WL 4979300 (10th Cir. Oct. 27, 2021); *cf. Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 2, 85 P.3d 230, 232 (stating, in the context of an insurer's alleged failure to pay or settle a claim, that "punitive damages may only be awarded when the insurer's conduct was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton"); *Smith v. Liberty Mut. Fire Ins. Co.*, 495 F.Supp.3d 1019, 1034 (D.N.M. 2020) ("To make out a claim for punitive damages

for insurance bad faith, a plaintiff must show that the insurer 'acted with reckless disregard for the interest of the nonbreaching party.') (quoting *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 24, 880 P.2d 300, 307 (1994)). That a plaintiff has stated a claim for relief is not, by itself, a sufficient basis for a punitive damages claim; rather, the plaintiff must also show the requisite culpable mental state. *See Young v. Hartford Cas. Ins. Co.*, 503 F. Supp. 3d 1125, 1209–10 (D.N.M. 2020).

Here, in addition to generally alleging that Titan acted "in bad faith and based on dishonest business judgment" and "intentionally, willfully, wantonly, grossly and/or with reckless disregard" to Plaintiff's interests, (Doc. 1-1, ¶¶ 77, 115), Plaintiff specifically alleges that Titan:

(1) "knew that, because of the operation of the offset described in *Schmick*, [Plaintiff was] vanishingly unlikely to receive the underinsured motorist benefits that [she] contracted for and for which [Titan] collected premiums," (*id.* at 22);

(2) "knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico," (*id.* at 19);

(3) "took advantage of the lack of knowledge and experience of [Plaintiff] to a grossly unfair degree," (*id.* at 21); and,

(4) made statements that "misrepresented the true value of the illusory minimal-limits underinsured motorist coverage that it advertised and sold to [Plaintiff] and for which [it] collected premiums." (*Id.* at 11).

Titan argues that Plaintiff has failed to allege facts showing that it had a "culpable state of mind." (Doc. 25 at 26). However, Plaintiff's allegations that Titan knew her UIM coverage was unlikely to benefit her, and made false and misleading statements regarding its value, are sufficient to allege that Titan was "utterly indifferen[t]" to the consequences of its conduct. *Nowell*, 372 F.

Supp. 3d at 1238. While Plaintiff may ultimately be unable to prove entitlement to punitive damages, her FAC pleads just enough facts to survive dismissal at this stage.[10]

Titan also argues in a single paragraph that its conduct cannot be "malicious, willful or wanton if it is consistent with both *Weed Warrior* and *Jordan*." (Doc. 25 at 27 (emphasis omitted)). But while Titan was permitted to sell UM/UIM coverage as it did here, it has never been legal to do so by misrepresenting such coverage to consumers. The Court therefore rejects Titan's argument that punitive damages are improper merely because its sale of the Policy was consistent with *Weed Warrior*, *Jordan*, and *Crutcher*. (Doc. 25 at 27). And while there may be other legal bases for barring punitive damages as to certain claims, since Titan did not raise them in its motion, they are not properly before the Court. The Court will deny the Titan Motion as to Plaintiff's request for punitive damages.

## VII.   CONCLUSION

The Court will grant the Nationwide Defendants' Motion to Strike because Plaintiff's Response to the NSA does not comply with the Federal Rules of Civil Procedure and this Court's Local Rules. In addition, the Court will grant the Nationwide Motion because Plaintiff has not shown that she has standing to assert claims against any of the Nationwide Defendants, nor has she shown that jurisdictional discovery is warranted at this time. However, the Court will grant the Nationwide Motion without prejudice to Plaintiff's ability to file a properly supported motion to amend the FAC within the time set by the Court below.

---

[10] Plaintiff's punitive damages claim, and indeed her FAC as a whole, would be stronger if she had included significantly greater detail regarding the false and misleading statements Titan allegedly made and the context in which it made them. However, at this juncture, the Court finds that her allegations are just "enough to raise a right to relief above the speculative level." *Barnett*, 956 F.3d at 1234.

Finally, the Court will grant the Titan Motion in part and deny it in part. *Crutcher* does not bar Plaintiff's claims resting on allegations that Titan misrepresented the value of minimum limits UIM coverage in its application, Policy, and oral and written statements. Moreover, the Offset Provision, read in the context of Plaintiff's misrepresentation allegations, was by itself insufficient to inform Plaintiff that she may not have UIM coverage in most circumstances. However, *Crutcher* precludes Plaintiff's claims to the extent they are based solely on Titan's sale of minimum limits UM/UIM coverage to Plaintiff, its adjustment of Plaintiff's claim, or its offset of UIM coverage by the amount the tortfeasor's insurer paid Plaintiff.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that

1. Defendants' Motion to Strike Response to Notice of Supplemental Authority (Doc. 48) is GRANTED.

2. The Nationwide Defendants' Consolidated Motion and Memorandum Brief in Support of their Motion for Judgment on the Pleadings (Doc. 27) is GRANTED without prejudice to Plaintiff's ability to move to amend her First Amended Complaint. Plaintiff must file any such motion to amend no later than **Monday, October 31, 2022**.

3. Defendants Titan Insurance Company and Victoria Fire and Casualty Company's Motion for Judgment on the Pleadings (Doc. 24) is GRANTED IN PART and DENIED IN PART as follows:

   a. The Titan Motion is GRANTED as to Plaintiff's claims for Reformation of Insurance Policy (Claim 4), Unjust Enrichment (Claim 6), and Injunctive Relief.

   b. The Titan Motion is GRANTED IN PART and DENIED IN PART as to Plaintiff's claims for Negligence (Claim 1), Violations of the New Mexico Unfair Insurance

Practices Act (Claim 3) and Breach of the Covenant of Good Faith and Fair Dealing (Claim 5).

   c.  The Titan Motion is DENIED as to Plaintiff's request for punitive damages and Claims 2, 7, and 8.

**IT IS SO ORDERED.**

**KIRTAN KHALSA**
**United States Magistrate Judge**
**Presiding by Consent**